**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DMARIUS DOBBINS,<br><br>Plaintiff,[1]<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | ) | Case No. CIV-24-01030-JD |

# ORDER

As Defendant Experian Information Solutions, Inc. ("Experian") acknowledges, it mixed Plaintiff Dmarius Dobbins's credit file with the file of his twin brother, Darius Dobbins. The twins share the same birthday, the same physical address from birth to present, and similar names, their Social Security numbers are one digit off sequentially, and they are both employed by Bob Howard Toyota. Claiming the mix-up harmed him, Dmarius sued under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. [Doc. No. 1]. He claims that Experian failed to follow reasonable procedures to assure maximum possible credit report accuracy under 15 U.S.C. § 1681e(b).

The case is presently before the Court on several motions. The first is Experian's Motion for Summary Judgment [Doc. No. 65].[2] Dmarius filed a response in opposition

[1] The Court displays Plaintiff's name in this order as it appears on the Court's docket. Additionally, to avoid confusion given the nature of the issue with his twin brother, the Court uses Plaintiff's first name throughout this order, as it appears on the Court's docket.

[2] The Appendix of Exhibits to Experian's Motion for Summary Judgment is filed at [Doc. No. 66]. Exhibit No. 5 is filed under seal at [Doc. No. 71].

[Doc. Nos. 104 (sealed), 105 (sealed exhibit), 114 (redacted)], and Experian filed a reply [Doc. Nos. 110 (redacted), 111 (sealed)]. In addition, Experian filed a Notice of Supplemental Authority in support of its Motion for Summary Judgment. [Doc. No. 120].

The second motion at issue is Dmarius's Motion for Partial Summary Judgment [Doc. Nos. 84 (redacted), 85 (sealed)].[3] Dmarius seeks summary judgment on liability under the FCRA and asks that the jury be allowed to determine damages. Experian filed a response in opposition [Doc. Nos. 98 (redacted), 102 (sealed)]. In addition, Dmarius filed Notices of Supplemental Authority in support of his Motion for Partial Summary Judgment [Doc. Nos. 118, 129] and Experian filed a response to Dmarius's latest notice [Doc. No. 131].

The third motion at issue is Experian's Motion to Exclude or Limit the Report and Testimony of Plaintiff's Expert Douglas Hollon ("Motion to Exclude") [Doc. No. 67].[4] Dmarius filed a response in opposition [Doc. No. 99], and Experian filed a reply [Doc. No. 112]. In addition, Dmarius filed a Notice of Supplemental Authority relating to the Motion to Exclude [Doc. No. 119].

In summary, because Dmarius has failed to show that he suffered any damages specifically caused by Experian mixing some of his brother's credit information into his

[3] The Court has also listened to the audio recording filed conventionally with the Court and contained in Exhibit 3 to Dmarius's Motion for Partial Summary Judgment. *See* [Doc. Nos. 86, 87]. The recording is of his phone dispute with Experian on February 9, 2024.

[4] Exhibits 1, 2, and 7 to Experian's Motion to Exclude are conventionally filed under seal with the Court. *See* [Doc. No. 72].

credit file or adduce evidence of willfulness, Experian's Motion for Summary Judgment [Doc. No. 65] is granted, Dmarius's Partial Motion for Summary Judgment [Doc. No. 84] is denied, and Experian's Motion to Exclude [Doc. No. 67] is denied as moot.

## I. BACKGROUND

Plaintiff Dmarius Dobbins and his brother, Darius Dobbins, are twins. They share the same date of birth and similar names and have shared the same physical address from birth to present. Even during temporary periods of physical separation, Dmarius continued to use his brother's address. Dmarius currently resides with his brother Darius. Their Social Security numbers ("SSN") are only one number off sequentially. Additionally, they have worked several jobs at the same time with the same employer, including Bob Howard Toyota. Information belonging to Darius first appeared on Dmarius's credit file in 2020.

Experian is a consumer reporting agency ("CRA") under § 1681a(f) of the FCRA. Experian as a CRA stores data supplied by creditors and lenders, i.e., "furnishers." A "mixed file," sometimes referred to as a "merged file," occurs when similarities in identifying information leads Experian's matching algorithm to incorrectly link credit information to the wrong individual. Experian is typically put on notice of a mixed file when a consumer disputes items appearing on his credit report. When a file is mixed, items belonging to both consumers appear in one credit file.

When a consumer disputes a mixed file, Experian reviews the file, identifies and corrects mismatched data, and ensures only the consumer's information remains. A "Do Not Combine" indicator is then added, requiring stricter matching—including all nine

SSN digits—before new information is added to the file. When a “Do Not Combine” indicator is on a consumer’s file, inadvertently misreported identifying information will not be added to the file.

Furnishers report consumer data to Experian and subscribers receive reports from Experian. Here, furnishers or subscribers reported accounts to Experian, or requested reports, with (1) Dmarius’s correct name and SSN; (2) Dmarius’s brother’s correct name and no SSN; and (3) Dmarius’s correct name and his brother’s SSN.

Dmarius’s credit file was mixed by other CRAs, and Dmarius filed a lawsuit against Trans Union, LLC, and AmRent, Inc., alleging similar claims. Dmarius discovered that his Trans Union file was mixed with his brother’s file sometime on or after January 13, 2024.

On February 9, 2024, at 1:13 p.m. CT, Dmarius called Experian to discuss his credit report. He spoke to a trained dispute processing agent, and the call lasted about 19 minutes, ending at 1:35 p.m. CT. The agent promptly identified that Dmarius’s file was mixed and immediately took steps to correct the issue. Within three hours, at 4:30 p.m. CT, Experian had unmixed Dmarius’s file with his brother’s file, implemented a “Do Not Combine” indicator to prevent further mixing, and sent Dmarius the dispute results via email.

Dmarius alleges he was denied credit when he applied for an American Express credit card on February 9, 2024. When Dmarius called Experian on February 9, 2024, to dispute information on his credit report, Experian immediately generated a credit disclosure of Dmarius’s file as it appeared before removing his brother’s credit

information. This credit disclosure listed Dmarius's FICO score with Experian as **506**. *See* [Doc. No. 66-1 ¶ 28; Doc. No. 66-4].

Dmarius applied for an American Express Gold Card on February 9, 2024, at 4:30 p.m., although the time zone is unknown. [Doc. No. 66-5; Doc. No. 71-2]. Dmarius indicated he applied for an American Express Gold Card because he "thought that [American Express] would be able to give [him] . . . [his] credit score." [Doc. No. 66-2 at 10 (170:12–13)].[5] American Express denied Dmarius's credit application, citing the FICO score it obtained from Experian as the sole basis for the denial. [Doc. No. 66-5; Doc. No. 71-2 at 7]. The FICO score Experian provided to American Express on February 9, 2024, was **462**. *Id.*

Ten days later, on February 19, 2024, Dmarius requested a credit disclosure from Experian. This unmixed credit disclosure, which contained only Dmarius's information, listed his FICO score with Experian as **462**. [Doc. No. 66-6]. The credit information on Dmarius's February 19, 2024 disclosure indicates no substantive changes occurred from the credit information on his unmixed February 9, 2024 disclosure. [Doc. Nos. 66-6, 66-7].

Dmarius stated in his deposition that he suffered emotional distress in the form of "stress" and "sleepless nights." [Doc. No. 66-2 at 12 (223:6–7)]. He indicated that his stress and inability to sleep occurred "[b]ecause . . . I've been living with my brother since, you know. I don't know for how long. But, you know, and I haven't been able to

---

[5] The Court uses CM/ECF page numbering from the top of district court docket filings in this order.

really make a move, you know, to build a path for my daughter . . . .” *Id.* (223:6–11). When asked what Experian’s role was in Dmarius’s stress, he responded “just making the mistake and, you know, merging my account with my brother, I mean.” *Id.* (223:19–21).

When asked if there was “a specific credit denial that impacted [him],” Dmarius stated “[r]eally just for apartments” or “[m]aybe like a car. But . . . I was able to apply for a car on my job before I left Toyota.” *Id.* at 19–20 (230:21–231:2). He indicated that he was approved for that car. *Id.* at 20 (231:3–4). Dmarius indicated that he financed this car after Experian had fixed his credit file. *Id.* (231:10–15). When asked if aside from the rental application he had been harmed based on Experian’s reporting of his credit score, Dmarius indicated he had not “applied for anything that [he could] remember . . . or tried to use [his] credit or [SSN] to even apply for any apartments or car for so long.” *Id.* at 20–21 (231:19–232:4).

Dmarius has not sought medical treatment, therapy, or other support for his alleged emotional damages. *Id.* at 27–28 (263:8–264:6). He testified that he had been “dealing with” credit issues “before [he] even called Experian to fix the situation” on February 9, 2024. *Id.* at 14–15 (225:25–226:8). When asked for clarification, Dmarius stated he “never really knew which credit bureau” he had been dealing with to fix the situation. *Id.* at 15 (226:10–11).

## II. LEGAL STANDARD

Summary judgment shall be granted “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). “An issue of fact is material if under the substantive law it is

essential to the proper disposition of the claim." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (internal quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). A dispute about a material fact is genuine if a rational trier of fact could find in favor of the nonmoving party on the evidence presented. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018); *see also Anderson*, 477 U.S. at 248 (explaining a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

In applying this standard, the Court "review[s] the facts and all reasonable inferences those facts support[ ] in the light most favorable to the nonmoving party." *Doe v. Univ. of Denv.*, 952 F.3d 1182, 1189 (10th Cir. 2020) (second alteration in original) (quoting *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019)). "While we view the record in the light most favorable to the party opposing summary judgment, 'the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Phillips v. Calhoun*, 956 F.2d 949, 950 (10th Cir. 1992) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Id.* at 950 n.3.

"When the parties file cross motions for summary judgment, '[the court is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but

summary judgment is nevertheless inappropriate if disputes remain as to material facts.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quoting *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997)). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Id.* (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

## III. <u>ANALYSIS</u>

Dmarius alleges that Experian failed to follow reasonable procedures to assure maximum possible credit report accuracy under § 1681e(b) of the FCRA. That statutory provision requires CRAs, like Experian, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Dmarius alleges Experian's § 1681e(b) violation was negligent or willful and seeks actual, statutory, and punitive damages. *See* 15 U.S.C. §§ 1681*o*, 1681n.

However, as several circuit courts have explained, the FCRA "is not a strict liability statute." *Suluki v. Credit One Bank, NA*, 138 F.4th 709, 721 (2d Cir. 2025) (citation omitted); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) ("As we have made clear, the FCRA is not a strict liability statute."); *see Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 745 (11th Cir. 2020) (explaining that the "FCRA does not make [CRAs] strictly liable for all inaccuracies, but instead creates a private right of action for negligent or willful violations"); *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 417 (4th Cir. 2001) (same).

To succeed on a § 1681e(b) claim, "a plaintiff must 'establish that: (1) [the CRA] failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) [the plaintiff] suffered injury; and (4) [the CRA's] failure caused his injury.'" *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015) (quoting *Eller v. Trans Union, LLC*, 739 F.3d 467, 473 (10th Cir. 2013)). Under § 1681*o*(a), a consumer is entitled to actual damages for a negligent violation of the FCRA. "Under § 1681n(a), however, the consumer need not prove actual damages if the violation is willful, but may recover punitive and statutory damages ranging from $100 to $1,000." *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011). "A 'willful' violation is either an intentional violation or a violation committed by an agency in reckless disregard of its duties under the FCRA." *Id.* (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007)).

Because Dmarius has failed to establish either injury or causation, those deficiencies are dispositive of his § 1681e(b) negligent violation claim and the Court need not reach the separate question of whether Experian's procedures were reasonable within the meaning of the FCRA. The Court further determines that Dmarius has failed to create a genuine dispute regarding his claim of willful violation and that summary judgment is therefore appropriate in favor of Experian.

**A. Dmarius fails to create a genuine dispute as to causation or actual injury.**

Experian argues that it did not cause Dmarius any actual damages, that Dmarius was not denied credit because Experian mixed his credit file, and that Dmarius's alleged emotional damages are too speculative and vague to survive summary judgment. Dmarius

has "the affirmative duty of coming forward with evidence supporting his claim that [Experian's] alleged inaccurate report caused him harm." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1181 (10th Cir. 2013) (citation omitted); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021) (explaining that where plaintiffs "do not demonstrate that they suffered any harm *at all*," they lack Article III standing to pursue claims under the FCRA) (emphasis in original).

***(1) Dmarius does not create a triable issue as to whether he suffered actual economic damages caused by Experian.***

The Court concludes that Dmarius has not created a triable issue as to whether he suffered actual economic damages caused by Experian. The American Express credit denial was based on Dmarius's accurate, unmixed FICO score of 462, which was 44 points lower than the score reported before Experian unmixed the credit file. Further, Dmarius offers only conclusory assertions that he was denied housing at an apartment and speculates that he was denied a car loan. He identifies no documentation, testimony, or other evidence establishing any such credit denials, much less evidence that any denial resulted from inaccurate reporting by Experian. Indeed, Dmarius testified that he ultimately financed a vehicle through his employment at Toyota.

When Dmarius called Experian on February 9, 2024, to dispute information in his credit report, Experian immediately generated a credit disclosure of Dmarius's credit file as it appeared before removing his brother Darius's credit information. This credit disclosure reflected a FICO score of 506. Within three hours, Experian unmixed Dmarius's credit file and reissued Dmarius's credit report. The unmixed credit disclosure,

which contained only Dmarius's information, reflected a FICO score of 462.

Business records from American Express show that Dmarius submitted his application after Experian had completed the unmixing process, and the denial letter cites only one basis for the adverse action, i.e., Dmarius's FICO score of 462 obtained from Experian. Accordingly, the denial did not result from Experian's inaccurate reporting and does not establish that Experian caused Dmarius any injury or economic damages.

***(2) Dmarius's conclusory statements about his emotional distress are not sufficient to survive summary judgment, nor can they be attributed to Experian.***

Dmarius asserts that his own "testimony clearly detail[s] the emotional distress damages that [he] sustained." [Doc. No. 104 at 30]. To be sure, "[a]n injured person's testimony *alone* may suffice to establish damages for emotional distress provided that [he] reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements." *Llewellyn*, 711 F.3d at 1183 (citation omitted) (emphasis in original). However, here, Dmarius testified that unspecified stress and sleepless nights constituted the extent of his emotional distress. He admits he never sought medical treatment, therapy, or other support for his emotional distress. Nor does Dmarius identify any physiological symptoms that could lend objective support to his claim. *See id.* at 1182.[6]

---

[6] *Cf. Dunmore v. Experian Info. Sols., Inc.*, No. 2:24-cv-225, 2026 WL 2167801, at *1, *4–5 (N.D. Ind. July 25, 2026) (granting summary judgment to Experian in a mixed twin credit file case because the plaintiff "has failed to show that she suffered any damages specifically caused by Experian mixing some of her [twin] brother's credit information into her credit file" and the plaintiff's "claims of emotional damages [are] self-serving [and] . . . vague"); *Collins v. Diversified Consultants Inc.*, No. 15-cv-02115-RBJ-NYW, 2017 WL 8942568, at *16 (D. Colo. Feb. 1, 2017) (concluding that the

Further, the record does not demonstrate that Experian was the cause of any of Dmarius's damages. Dmarius attributed his stress and sleepless nights to his prolonged co-habitation with his brother and inability to secure housing for him and his daughter, none of which he tied to Experian's alleged inaccurate reporting of his credit. Dmarius's prior disputes with other CRAs also complicate his ability to attribute his alleged emotional distress specifically to Experian. Approximately one month before disputing his credit file with Experian, Dmarius discovered that Trans Union had mixed his credit file with that of his brother's. Four weeks later, he contacted Experian, and Experian unmixed his file the same day. Dmarius testified that he had experienced credit issues before contacting Experian on February 9, 2024, to resolve the matter. When asked to clarify, Dmarius stated that he did not know which CRA he had previously contacted in an effort to address the issue.

In summary, the record fails to establish that any portion of Dmarius's alleged emotional distress was attributable to Experian's conduct, rather than his prior experiences with other CRAs. Dmarius's conclusory and uncorroborated statements are not sufficient to create a triable issue as to whether he suffered emotional distress

---

plaintiff's "self-serving, conclusory, and uncorroborated statements" about "damage to his reputation, worry, fear, emotion[al] distress, mental anguish, fear of personal and financial safety and security, anger, humiliation, embarrassment, inconvenience, anxiety, . . . frustration, [and] . . . sleepless nights . . . are not sufficient to create a triable issue"), *R. & R. adopted by*, 2017 WL 971528, at *7 (D. Colo. Mar. 13, 2017) (overruling the plaintiff's objection and explaining that the plaintiff "did not tie any of these alleged damages to Equifax" and "his claim that he sustained this long list of non-economic damages is incredible on its face" when considering the underlying facts), *aff'd*, 754 F. App'x 714 (10th Cir. 2018) (unpublished).

damages. Consequently, the Court determines that Experian is entitled to summary judgment on Dmarius's § 1681e(b) negligent violation claim.

**B. Dmarius fails to create a genuine dispute as to willfulness under § 1681n.**

The FCRA imposes civil liability on "[a]ny person who willfully fails to comply with any [FCRA] requirement . . . with respect to any consumer [such that that person] is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A) (emphasis added). Because Dmarius fails to establish actual damages, as discussed above, the remaining analysis turns on whether he has shown that Experian acted willfully to entitle him to statutory damages.

To show Experian willfully violated the provision, Dmarius must show Experian intentionally violated § 1681e(b) or that Experian committed a violation "in reckless disregard of its duties under the FCRA." *Birmingham*, 633 F.3d at 1009. "Recklessness is measured by 'an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should have been known.'" *Id.* (quoting *Safeco*, 551 U.S. at 68).

The Tenth Circuit applied that standard in *Birmingham*, affirming summary judgment on a willfulness claim where the plaintiff offered no evidence that the defendant's "specific actions with respect to [the plaintiff] were reckless." *Id.* at 1012. The Circuit emphasized that "[t]o infer that Experian acted recklessly in response to the complaint would require inappropriate speculation," and concluded that a reasonable factfinder could not find a willful violation on the record before it. *Id.* Likewise, in

*Llewellyn*, the Tenth Circuit explained that the record contained no evidence of conduct that was reckless and no evidence of conduct undertaken with "any intention to thwart consciously [the plaintiff's] right to have inaccurate information removed promptly from his report." 711 F.3d at 1185.

Here, the undisputed record contains no such evidence.[7] On the very day Dmarius complained about the mixed file, Experian unmixed the file within three hours and placed a "Do Not Combine" indicator on the file to prevent further mixing. Those uncontested actions are inconsistent with an inference that Experian knowingly disregarded Dmarius's rights or consciously ran an unjustifiably high risk of violating the FCRA. Like the Tenth Circuit's analysis in *Birmingham*, on this record, "[a] reasonable person reviewing the evidence before the district court could not find Experian to have committed a willful violation of the FCRA." 633 F.3d at 1012.

## IV. CONCLUSION

Based on the foregoing reasons, Experian's Motion for Summary Judgment [Doc. No. 65] is granted, Dmarius's Partial Motion for Summary Judgment [Doc. No. 84] is denied, and Experian's Motion to Exclude [Doc. No. 67] is denied as moot. A separate judgment will follow.

---

[7] The Court need not resolve Dmarius's contention that Experian should [redacted]. *See, e.g.*, [Doc. No. 85 at 18–20]. Here, eight of the nine digits of the SSNs at issue matched, [redacted]. Thus, Dmarius's proposed safeguard does not establish that Experian knowingly or recklessly disregarded its duties under the FCRA.

IT IS SO ORDERED this 6th day of October 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE